## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**THOMAS LAM**                                              **CIVIL ACTION**

**VERSUS**                                                        **NO. 19-01785**

**ROBERT TANNER, WARDEN**                          **SECTION: "A"(1)**

### REPORT AND RECOMMENDATION

Petitioner, Thomas Lam, is a Louisiana state prisoner incarcerated at the Rayburn Correctional Center in Angie, Louisiana.  He filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254.  For the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

On August 12, 2015, on the second day of his jury trial, petitioner elected to accept a plea bargain offered by the state.  Pursuant to that plea agreement, he pleaded guilty to seven  offenses and was sentenced as follows:  one count of manslaughter, forty years; two counts of attempted second degree murder, forty-five years without benefit of parole, probation, or suspension of sentence on each offense; one count of armed robbery with a firearm, forty-five years without benefit of parole, probation, or suspension of sentence; one count of possession of alprazolam, five years; one count of possession of oxycodone, five years; and one count of possession of morphine, five years.  It was ordered that those sentences run concurrently.[1]

On August 3, 2016, petitioner filed an application for post-conviction relief with the state district court.[2]  That application was denied on October 20, 2017.[3]  His related writ applications

---

[1] State Rec., Vol. 4 of 4, transcript of August 12, 2015; State Rec., Vol. 1 of 4, guilty plea form.
[2] State Rec., Vol. 2 of 4.
[3] State Rec., Vol. 3 of 4, Ruling dated October 20, 2017.

were then denied by the Louisiana Fourth Circuit Court of Appeal on December 13, 2017,[4] and

the Louisiana Supreme Court on February 11, 2019.[5]

On February 21, 2019, petitioner filed the instant federal application seeking habeas corpus

relief pursuant to 28 U.S.C. § 2254.[6]  The state filed a response conceding that the application is

timely and that petitioner exhausted his remedies in the state courts; however, the state argued that

petitioner's claims should be denied on the merits.[7]  Petitioner filed a reply to the state's response.[8]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively

overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections

2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions

of law, and mixed questions of both.  The amendments modified a federal habeas court's role in

reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S.

685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the

AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court).

As to pure questions of fact, factual findings are presumed to be correct and a federal court

will give deference to the state court's decision unless it "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."  28

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application

---

[4] State v. Lam, No. 2017-K-0927 (La. App. 4th Cir. Dec. 13, 2017); State Rec., Vol. 3 of 4.
[5] State v. Lam, 263 So. 3d 416 (La. 2019); State Rec., Vol. 4 of 4.
[6] Rec. Doc. 1.
[7] Rec. Doc. 14.
[8] Rec. Doc. 17.

for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014). However, a federal

habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

> Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's]

favor, it cannot be said that the state court unreasonably applied clearly established Federal law."
Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added). The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. Woodall, 572 U.S. at 417.

## II. Petitioner's Claims[9]

### A. Ineffective Assistance of Counsel

Two of petitioner's claims concern purported ineffective assistance of counsel. He states:

> Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel advised Petitioner to plead guilty without notifying him [of] the true nature of the offenses and its required elements.[10]

He further states:

> Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to notify him of relevant facts that prove his innocence. Counsel also failed to comply with his request, and chose to maliciously withhold evidence with the intent to coerce the guilty plea.[11]

Those claims were denied on the merits by the state courts. The state district court stated:

> I
> I first address the claims pertaining to ineffective assistance of counsel. To establish such a claim, an inmate must show that his attorney's performance [was]

---

[9] For ease of analysis, petitioner's claims are discussed in a different order than listed in the petition.
[10] Rec. Doc. 1-1, p. 5.
[11] Id. at p. 6.

so deficient as to fall below an objective standard of reasonableness and that he suffered prejudice as a result of the deficiencies, "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." See Strickland v. Washington, 466 U.S. 668, 687 (1984); see also State v. Jenkins, 14-1148, pp. 6-7 (La. App. 4 Cir. 5/6/15), 172 So. 3d 27, 33-34.

Mr. Lam claims that his trial counsel failed to impeach Detective Ryan Vaught; failed to investigate and subpoena witnesses in light of several differing eyewitness accounts; failed to challenge an identification of him when it was discovered the witness suffered from paranoid schizophrenia; and failed to mount a defense based on a ballistics report which shows the gun recovered from Mr. Lam's residence did not match the casings recovered at the scene. He also claims that counsel's ineffectiveness led Mr. Lam to plead guilty without understanding the charges against him, and without the benefit of full discovery, specifically an autopsy report of the victim and two NOPD supplemental reports. Finally, Mr. Lam claims that the trial judge did not inform him of the essential elements of each offense when he entered his plea and that trial counsel failed to object to this deficiency.

## A

As an initial observation, the record reveals the overwhelming evidence pointing to Mr. Lam as the perpetrator. Mr. Lam appears to take issue with minor discrepancies in Det. Vaught's police report and his testimony at the preliminary hearing. Counsel's alleged failure to impeach Det. Vaught with respect to these discrepancies (e.g., writing "him" when the individual was female) can hardly be considered deficient performance. Further, contrary to Mr. Lam's assertion, the descriptions given by witnesses to police are, on the whole, very consistent, with nearly inconsequential differences, which are to be expected from eyewitness accounts. As to the victim's diagnosis of schizophrenia, counsel had the benefit of this information well before Mr. Lam decided to plead guilty. Counsel had also received the ballistics report prior to the trial date. Effective counsel does not mean counsel must advance every argument the defendant urges, and the Strickland standard presumes, unless shown otherwise, that counsel's performance was within the wide range of effective representation. See State ex rel. Sparkman v. State, 15-1726, pp. 2-3 (La. 10/17/16), 202 So. 3d 488, 491. Mr. Lam's trial counsel was aware of the victim's diagnosis and the ballistics results, yet chose to advise his client to plead guilty in light of all the other evidence. I do not find counsel's choices amount to constitutionally deficient performance.

## B

As to Mr. Lam's claims of ineffective assistance regarding his pleas of guilty, it is well-settled that he must show deficient performance *and* that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52-58-59 (1985). And, the validity of a guilty plea turns on whether the defendant was

informed of his constitutional rights under <u>Boykin v. Alabama</u>, 395 U.S. 238 (1969), and whether he knowingly and voluntarily waived them.  The guilty plea transcript reveals that Mr. Lam was present when the trial court read into the record the amended counts to which he would plead guilty to and the corresponding sentences which were to be imposed under the agreement.  The trial judge also read the charges which had been dismissed.  Defense counsel requested and was given ample time to complete the plea form and to consult with Mr. Lam and his family.  The trial judge informed Mr. Lam of his constitutional <u>Boykin</u> rights (right against self-incrimination, right to trial by jury, right to confront one's accusers), and when asked whether he was entering the guilty pleas freely and voluntarily, Mr. Lam replied "Yes."  When asked if he had any questions, Mr. Lam replied, "No."  Though the trial judge did not state the essential elements of every offense, it is clear that Mr. Lam entered his guilty pleas voluntarily.  <u>See</u> <u>State v. Juniors</u>, 03-2425, pp. 60-61 (La. 6/29/05), 915 So. 2d 291, 334-35 ("The ultimate inquiry under <u>Boykin</u> is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.").

Thus, there is no evidence that either the trial judge or counsel erred.  Moreover, especially in light of the overwhelming evidence of Mr. Lam's guilt, including a positive identification of him as the shooter, and considering that he faced a mandatory life sentence had he proceeded to trial and lost, Mr. Lam has not shown that, but for counsel's alleged errors, he would not have pled guilty.  <u>See</u> <u>Lockhart</u>, at 58-59.

## C

With respect to missing discovery, the record shows that the prosecution turned over the victim's autopsy report to defense counsel prior to trial.  The record indicates that trial counsel did in fact receive all the documents Mr. Lam complains about, although some were apparently missing from the file which he received post-trial.  Notably, Mr. Lam is in possession of a vast amount of documents relating to his case, many of which are not even found in the record.  It is unclear, and Mr. Lam does not explain, how the few missing documents are essential to his claims.  In any event, there is no indication that counsel proceeded without the benefit of full discovery from the state.[12]

The Louisiana Fourth Circuit Court of Appeal thereafter also denied relief, finding "no error" in the district court's ruling.[13]  The Louisiana Supreme Court then likewise denied the related writ application, succinctly stating: "Relator fails to show that he received ineffective assistance of

---

[12] State Rec., Vol. 3 of 4, Ruling dated October 20, 2017, pp. 2-4.

[13] <u>State v. Lam</u>, No. 2017-K-0927 (La. App. 4th Cir. Dec. 13, 2017); State Rec., Vol. 3 of 4.

counsel under the standard of <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984)."[14]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims on the merits unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable. This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

---

[14] <u>State v. Lam</u>, 263 So. 3d 416 (La. 2019); State Rec., Vol. 4 of 4.

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (emphasis added; citations omitted). Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

The United States Fifth Circuit Court of Appeals has held: "[O]nce a guilty plea has been entered, all nonjurisdictional defects in the proceedings against a defendant are waived. This includes all claims of ineffective assistance of counsel, *except* insofar as the alleged ineffectiveness

relates to the voluntariness of the giving of the guilty plea."  Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) (citations omitted).

As the state courts correctly held, the clearly established federal law with respect to ineffective assistance of counsel claims was set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  For relief to be granted on such a claim, Strickland requires that a petitioner show both that counsel's performance was deficient and that the deficient performance prejudiced his defense.  Id. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

Although the state courts concluded that petitioner's ineffective assistance claims failed on both prongs of the Strickland analysis, this Court is not required to consider both prongs. Rather, if the Court finds that a petitioner has made an insufficient showing on either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697. Here, the undersigned recommends that petitioner's claims simply be denied on the prejudice prong for the following reasons.

Although petitioner asserts that he would not have pleaded guilty but for his counsel's purportedly deficient performance,[15] this Court is not required to accept such self-serving statements as true. See Lee v. United States, 137 S. Ct. 1958, 1967 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."); Hartshorn v. Prince, Civ. Action No. 12-1359, 2012 WL 3860469, at *9 (E.D. La. July 30, 2012) ("[D]espite his self-serving allegations to the contrary, the Court finds that it is not reasonably probable that petitioner would have rejected this extremely generous plea agreement. As a result, he has not established the prejudice required to support his claim."), adopted, 2012 WL 3862352 (E.D. La. Sept. 5, 2012). In the instant case, the Court finds that petitioner's assertions are not alone sufficient to meet his burden of proof in light of the totality of the circumstances.

---

[15] Rec. Doc. 1-1, pp. 5 ("Petitioner would have continued trial if counsel explained these elements that require the actions of murder.") and 6 ("Petitioner would have rejected counsel's advice to plead guilty if these essential elements were explained to him.").

The indictment charged, *inter alia*, that petitioner committed the armed robbery and second degree murder of Helene Jackson, as well as the attempted second degree murders of Kenton and Lance Jackson.[16]  Each one of those crimes carried a severe or potentially severe sentence.  The sentence for second degree murder was mandatory life imprisonment without benefit of parole, probation, or suspension on sentence, La. Rev. Stat. Ann. § 14:30.1(B), while the sentence for attempted second degree murder was "not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence," id. § 14:27(D)(1).  The sentence for armed robbery was "not less than ten years and … not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence," id. § 14:64(B), with an additional consecutive five-year sentence without benefit of parole, probation, or suspension of sentence where, as here, a firearm was used, id. § 14:64.3(A).  Further, in addition to those charges, petitioner also faced four drug charges.

Petitioner was therefore in a precarious position, most especially with respect to the most serious charge, i.e. that he committed the second degree murder of Ms. Jackson.  That is true because, even now, he does not dispute that he fired the shot that killed her.  Rather, he simply contends that her death was an unfortunate and unintended consequence of his attempt to save himself.[17]  However, relying on a self-defense argument is often a risky proposition, and it is even

---

[16] State Rec., Vol 1 of 4, indictment.

[17] In his federal application, petitioner stated:  "The State Court's theory was that petitioner arrived at the victim, Ms. Helen's house with the intentions to commit robbery and murder.  In actuality, petitioner was confronted with a life threatening situation, and was forced to defend himself against two individuals."  Rec. Doc. 1-1, p. 1.  Contending that he was simply at the house to retrieve a gun stolen from him, he alleged:

> Petitioner arrived at Ms. Helen's house; she answered the door and led him upstairs to her room where he observed the firearm located on the dresser near the entrance of the bedroom.  As petitioner grabbed the firearm of the dresser, she asked if he had any money in exchange for the firearm.  Petitioner expressed his disagreement on buying back his own gun, when suddenly he was grasped from behind in a chokehold.  Petitioner raised the firearm and shots were fired in a surprised,

more so in a case, such as this one, in which the state has an eyewitness to rebut that defense (here, Lance Jackson), and the defendant has no eyewitnesses whatsoever to corroborate his version of events.

Fortunately, petitioner had another option: a generous plea bargain offered by the state. Specifically, in exchange for his pleading guilty, the state agreed to (1) reduce the most serious charge, second degree murder, to manslaughter, (2) drastically reduce petitioner's sentencing exposure, and (3) dismiss one drug charge entirely.[18]  By accepting the plea bargain, petitioner was guaranteed that he would serve no more than forty-five years without benefit of parole, probation, or suspension of sentence.

Although that term of imprisonment was still daunting, it paled in comparison to the total sentencing exposure petitioner faced on the original charges.  In particular, as the state district court noted, there was a very real possibility he would be convicted of second degree murder due to the overwhelming evidence against him.  If so, on that charge alone, he faced a mandatory sentence of life without parole.  The severity of that sentence cannot be overstated.  As the United States Supreme Court has observed:

---

panic manner, while a male voice from behind shouted, "Get the gun!" and switched from a chokehold, to a bear hug position.  Therefore, locking petitioner's arms at his side.
    Petitioner was able to use his elbows, in a swinging motion, she attempted to yank the gun away from him.  Shots were fired in a panic manner while the two were attacking petitioner and attempting to yank it from his hands.  Ms. Helen collapsed to the ground while petitioner was still struggling with the person who had grabbed him from behind.  During this struggle, more shots were fired.
    Petitioner was able to break free, but stumbled and fell to his knee for a moment.  Regained momentum, looked back to see a male, who petitioner recognized as Lance Jackson, sprinted down the stairs.  In that moment, petitioner ran down the stairs and attempted to proceed out the front door, but encountered gun fire from Lance who had a gun of his own and exchanged gun fire as he departed the house.

Id. at pp. 2-3.
[18] The state dismissed the indictment's sixth count which charged petitioner with possession of hydrocodone.  State Rec., Vol. 4 of 4, transcript of August 12, 2015, pp. 4 and 17.

It is true that a death sentence is "unique in its severity and irrevocability," <u>Gregg v. Georgia</u>, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.); yet life without parole sentences share some characteristics with death sentences that are shared by no other sentences. The State does not execute the offender sentenced to life without parole, but the sentence alters the offender's life by a forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration, except perhaps by executive clemency – the remote possibility of which does not mitigate the harshness of the sentence. <u>Solem</u>, 463 U.S., at 300-301, 103 S.Ct. 3001. As one court observed in overturning a life without parole sentence for a juvenile defendant, this sentence "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." <u>Naovarath v. State</u>, 105 Nev. 525, 526, 779 P.2d 944 (1989).

<u>Graham v. Florida</u>, 560 U.S. 48, 69-70 (2010). Similarly, one scholar has opined:

> At least in jurisdictions without generous early release provisions, life sentences are practically akin to "death-in-prison sentences" or necessarily beget "death by incarceration." A "life term" is a cultural artifact, signifying the recipient's penal servitude until the end of his natural life. In other words, the State is thereby proactively and physically condemning the individual to die within prison walls. One author posits a life sentence is merely "a semantically disguised sentence of death." For the foregoing reasons, the availability of a life sentence has been referred to as the "new death penalty" or the "other death penalty."
>
> Alternatively, commentators have contended that life sentences can be *more* punitive than capital punishment, while receiving far fewer substantive and procedural protections. Professor Berry reasonably notes how a life sentence may be *experienced* by prisoners as extra brutal: "A death sentence has an end date, which for some may be less traumatic than imprisonment until one dies of natural causes. To the extent that living in prison constitutes suffering, life without parole allows for greater suffering, or at least a longer time for suffering." Compared to capital cases, cases resulting in life sentences are procedurally less likely to necessitate individualized attention to the offender's own characteristics, receive careful and extensive review, enjoy lengthy appellate processes, or be reversed.

Melissa Hamilton, <u>Some Facts About Life: The Law, Theory, and Practice of Life Sentences</u>, 20

Lewis & Clark L. Rev. 803, 813-14 (2016) (footnotes omitted).

In light of the high probability that a jury would have convicted petitioner of second degree

murder and the severe mandatory sentence he would receive for such a conviction, the Court finds

that he has failed to prove that, but for his counsel's purportedly deficient performance, there is a reasonable probability that he would have declined the generous plea bargain and insisted on going to trial.  Therefore, he has not established that he was prejudiced by counsel's performance.

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He has not made that showing in the instant case.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## B.  Invalid Guilty Plea

Lastly, petitioner claims:

> Petitioner's guilty plea was invalid as not having been entered knowingly, intelligently, and voluntarily under the Due Process Clause of the Fourteenth Amendment to the United States Constitution when he did not receive notification of the nature of the charges and its critical elements by the Trial Court or Counsel.[19]

In the state post-conviction proceedings, the state courts likewise denied that claim on the merits.

On this Court's review of that state court denial, "[w]hether a guilty plea is valid is a question of law, although historical facts are entitled to a presumption of correctness.  Accordingly, the inquiry before this Court is whether the denial of relief was contrary to, or an unreasonable application of, federal law."  Temple v. Vannoy, Civ. Action No. 18-1536, 2019 WL 3430489, at *6 (E.D. La. July 30, 2019) (citations omitted).  For the following reasons, the Court finds that it was not.

---

[19] Rec. Doc. 1-1, p. 3.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000). For a plea to be "voluntary," it must not be "induced by threats, misrepresentation, unfulfilled promises, or promises of an improper nature." United States v. Hernandez, 234 F.3d 252, 254 n.3 (5th Cir. 2000). For it to be "knowing" and "intelligent," "the defendant must have a full understanding of what the plea connotes and of its consequence. The defendant need only understand the direct consequences of the plea; he need not be made aware [of] every consequence that, absent a plea of guilty, would not otherwise occur." Id. at 255 (citation and quotation marks omitted).

Here, there is no evidence that petitioner's pleas were coerced or induced by misrepresentations or unfulfilled or improper promises,[20] so there is no basis for finding the pleas involuntary.[21]

---

[20] On the contrary, petitioner testified in the plea colloquy that no one had forced or threatened him to plead guilty and that he was entering his pleas freely and voluntarily. State Rec., Vol. 4 of 4, transcript of August 12, 2015, p. 15. Likewise, on the plea form, he acknowledged in writing that he had "not in any way been forced, coerced or threatened to enter this guilty plea." State Rec., Vol. 1 of 4, guilty plea form.

[21] In particular, the Court takes care to note that petitioner's negotiated pleas were not involuntary simply because they were motivated by his "desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged." Brady v. United States, 397 U.S. 742, 751 (1970). As the United States Supreme Court has noted:

> The plea bargaining process necessarily exerts pressure on defendants to plead guilty and to abandon a series of fundamental rights, but we have repeatedly held that the government may encourage a guilty plea by offering substantial benefits in return for the plea. While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas.

United States v. Mezzanatto, 513 U.S. 196, 209-10 (1995) (quotation marks, brackets, and citations omitted). Here, the fact that petitioner was not particularly enamored of the choices available to him is of no moment, and it in no way rendered his choice illusory or his plea coerced.

Rather, petitioner's claim is instead that his pleas were unknowing and unintelligent because he was not apprised of the nature and elements of the charges. Regarding such claims, the United States Supreme Court has held:

> A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid. Henderson v. Morgan, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005). However, the Supreme Court continued:

> While the court taking a defendant's plea is responsible for ensuring "a record adequate for any review that may be later sought," Boykin v. Alabama, 395 U.S. 238, 244, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) (footnote omitted), we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel. Cf. Henderson, supra, at 647, 96 S.Ct. 2253 (granting relief to a defendant unaware of the elements of his crime, but distinguishing that case from others where "the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused"). Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.

Id.

Undeniably, there are aspects of the instant case that give the Court pause, such as: (1) the judge did not advise petitioner of the elements of the offenses on the record during the colloquy; (2) the elements of the offenses were not set forth on the guilty plea form; and (3) petitioner's attorneys did not affirmatively state on the record or acknowledge on the guilty plea form that they had advised petitioner of the elements of the offenses.

Nevertheless, other factors weigh against petitioner. For example, the transcript of the plea colloquy reflects that the judge clearly listed all seven charges to which petitioner was pleading guilty[22] and stated: "You heard me yesterday, along with your attorneys and the State's attorneys explain again, as I mentioned before, what would have to be proven as to each count."[23] Further, the transcript reflects that petitioner acknowledged that he was in fact aware of the charges and their elements and that he had no questions:

> BY THE COURT:
> ...
>     Do you understand everything that I have explained to you regarding what you are pleading guilty to?
>
> BY THE DEFENDANT:
>     Yes.
>
> BY THE COURT:
>     And, you understand each of the elements of those crimes as you heard us explain them to the jury yesterday?
>
> BY THE DEFENDANT:
>     Yes.
>
> BY THE COURT:
>     Do you have any questions?
>
> BY THE DEFENDANT:
>     No.[24]

Further, even though defense counsel did not affirmatively state that they had advised petitioner of the elements of the offenses, there is a rebuttable presumption that they did so. As the United States Supreme Court has held:

---

[22] State Rec., Vol. 4 of 4, transcript of August 12, 2015, p. 5.
[23] Id. at p. 14.
[24] Id. at pp. 15-16.

> Normally the record contains either an explanation of the charge by the trial judge, or at least a representation by defense counsel that the nature of the offense has been explained to the accused. Moreover, *even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit.*

Henderson v. Morgan, 426 U.S. 637, 647 (1976) (emphasis added).  That presumption applies here and has not been adequately rebutted by petitioner.

Despite the foregoing, the Court concedes that there is nevertheless one aspect of the instant case that remains troubling:  the charging document was amended immediately prior to the entry of the guilty pleas to reduce the charge of second degree murder to the lesser included offense of manslaughter, and the record is unclear as to whether the previous day's discussion of the elements of the offenses included the elements of the lesser included offenses.  Although that might appear to be problematic at first blush, this Court is reassured by the fact that the United States Fifth Circuit Court of Appeals found otherwise in an unpublished decision in a case virtually indistinguishable from the instant one:  Smith v. Warden Allen Correctional Center, No. 99-30140, 2000 WL 309964 (5th Cir. Mar. 6, 2000).

In Smith, as in the instant case, Smith was originally charged with second degree murder but later pleaded guilty to the reduced charge of manslaughter.  In his habeas petition, he argued "that he was never informed of the elements of manslaughter and did not understand what those elements are, making his plea constitutionally involuntary."  Id. at *1.  The Fifth Circuit noted that there was no plea form in which defense counsel stated that they had informed Smith of the nature of the crime to which he was pleading guilty, and the judge "never expressly discussed the elements of manslaughter" during the plea colloquy.  Id. at *2-3.  However, after noting that Smith had excellent counsel and had been given the opportunity to discuss his case with them, the Fifth

Circuit then concluded that "[i]t would seem reasonable to assume that his lawyers discussed his offense in detail with him before he agreed to plead guilty." Because Smith had not met his burden to prove otherwise, habeas corpus relief was denied. Id. at *3.

The same logic applies in the instant case. When petitioner entered his pleas, he was represented by two attorneys, one of whom was Martin Regan, a prominent local criminal attorney with decades of experience representing criminal defendants. Moreover, the plea colloquy reflects that petitioner and his counsel were given repeated opportunities and ample time to discuss the pleas during the colloquy.[25] Therefore, as in Smith, there is simply no reason to believe that counsel failed to discuss the offenses in detail in those and their earlier discussions with petitioner concerning the plea bargain.

In the end, it must be remembered that *petitioner* bears the burden of proof with respect to his claim that his pleas were invalid. Moya v. Estelle, 696 F.2d 329, 332 (5th Cir. 1983). And, without more, he has clearly fallen short of meeting his burden of proof in the instant case. Therefore, he has failed to establish that the state court's decision denying this claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the AEDPA's deferential standards of review, this claim should be denied.

---

[25] State Rec., Vol. 4 of 4, transcript of August 12, 2015, pp. 5 ("BY THE COURT: … I'll wait for you to tell me when you are done."), 6 ("BY MR. REGAN: We just need another minute, Your Honor. BY THE COURT: Please take your time, as the gentleman is now completing the plea form."), 7 ("MR. REGAN CONTINUES TO CONFER WITH HIS CLIENT PRIVATELY. … MR. REGAN AND MR. BECKMAN CONTINUE TO CONFER PRIVATELY WITH THEIR CLIENT."), 9 (BY THE COURT: … Let the record reflect that the Defendant is now going over this [plea] form one last time, I presume, with each of his attorneys, privately at the Defense Table."), 10 ("THE DEFENDANT CONTINUES TO CONFER WITH HIS COUNSELORS."), and 15 (petitioner answered "Yes" when asked if he "had enough time to deliberate and consider this matter and meet with your family members privately and your attorneys privately").

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application seeking habeas corpus relief filed by Thomas Lam be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this _____27th_____ day of January, 2020.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

21